IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Walker D. Miller

Civil Action No. 09-cv-01576-WDM-KLM

WILDEARTH GUARDIANS,

    Plaintiff,

v.

PUBLIC SERVICE COMPANY OF COLORADO, d/b/a XCEL ENERGY,

    Defendant.

_____

**ORDER**
_____

    This matter is before me on Plaintiff WildEarth Guardians's ("WildEarth") Brief in response to my March 9, 2010 (ECF No. 68), Defendant Public Service Company of Colorado, d/b/a Xcel Energy's ("Xcel") Response to WildEarth's Brief (ECF No. 69), WildEarth's related Motion for Partial Summary Judgment (ECF No. 74), and Xcel's Motion to Strike (ECF No. 80).  Being sufficiently advised in the premises, I enter the following order.

Background

    This case concerns the permitting process before the Colorado Public Utilities Commission ("PUC") for Xcel's 750 megawatt coal-fired electric generating plant, known as Comanche Unit 3 ("Comanche 3").  Construction and operation of Comanche 3 are subject to the revisions of the Clean Air Act ("CAA"), 42 U.S.C. 7401 *et seq.*, which are administered in Colorado by the Air Pollution Control Division ("APCD") of the Colorado

Department of Public Health and Environment ("CDPHE").  The primary issue in contention was whether Xcel was required to obtain a Maximum Achievable Control Technology ("MACT") determination regarding mercury emissions pursuant to section 112(g) of the CAA, 42 U.S.C. § 7412(g), prior to beginning construction and/or thereafter.   As discussed in further detail below, when Xcel first began the permitting processes, Electric Utility Generating Units ("EGUs") such as Comanche 3 were initially categorized under the CAA as a major source of hazardous air pollutants ("HAPs"), including mercury, pursuant to 42 U.S.C. § 7412a(1) and were subject to MACT limitations of section 312(g).  Thereafter, the Environmental Protection Agency ("EPA") initiated and consummated a "delisting" process to remove EGUs from regulation under section 112 and placing them under section 111 to be governed by a Clean Air Mercury Rule ("CAMR").  Although Xcel sought its permit in accordance with section 112, it was ultimately issued pursuant to section 111 (although it in fact still complied with section 112).  In 2008, the EPA's delisting was deemed improper in *New Jersey v. Envtl. Prot. Agency*, 517 F.3d 574 (D.C. Cir. 2008) and voided.

      The detailed history of Xcel's permit application, construction, and actions after the *New Jersey* decision is set forth in my March 9, 2010 Order on Motion to Dismiss (ECF No. 64) by which I partially granted Xcel's Motion to Dismiss and abstained from further review of the CDPHE permit subsequent to the issuance of an amended permit on February 22, 2010.  I denied without prejudice Xcel's Motion to Dismiss on the basis of retroactivity.  I ordered the parties to submit briefs on whether Xcel should be penalized if I were to conclude that it violated section 112(g) of the CAA with its construction activities prior to the issuance of its revised permit on February 22, 2010.

Following the parties' briefing, I am sufficiently advised to decide this matter without further argument.

## Discussion

The unresolved issue is whether Xcel's ongoing construction without a prior MACT determination until the revised permit of February 22, 2010, was a continuing violation of section 112(g) which exposes Xcel to civil penalties and liability for WildEarth's costs and attorneys' fees.

WildEarth takes the position that Xcel was required to have a MACT determination before any construction began or, at a minimum, before any continued construction once the *New Jersey* decision was issued. WildEarth first argues simply that a MACT determination was always required under section 112(g) regardless of the delisting rule, relying heavily on *S. Alliance for Clean Energy v. Duke Energy Carolinas, LLC,* Civil No. 1:08CV318, 2008 WL 5110894 (W.D.N.C., Dec. 2, 2008).[1] WildEarth argues that EPA's misinterpretation of what the law required does not change or nullify the existing law. *Caballery v. United States Parole Comm'n*, 673 F.2d 43, 47 (2d Cir. 1982) (a party does not have a vested right in misinterpretation of a law). Minimally, WildEarth argues construction should have stopped once *New Jersey* was decided until there was an actual MACT determination, generally from early 2009 until February 22, 2010. *See* WildEarth's Brief in Response to Court Order of March 9, 2010 (ECF No. 68) at p. 8.

---

[1] Xcel points out that this case was actually dismissed after deferring to the state permitting process. *S. Alliance for Clean Energy v. Duke Energy Carolinas, LLC*, Civil No. 1:08CV318, 2009 WL 1940048 (W.D.N.C., July 2, 2009).

WildEarth rejects any argument that retroactive application of section 112(g) is prohibited by *Harper v. Virginia Department of Taxation*, 509 U.S. 86 (1993)[2]. Instead, WildEarth argues that this case is governed by the application of the factors set forth in *Chevron Oil Co. v. Huson*, 404 U.S. 97 (1971), which leads to the conclusion that the principles of *New Jersey* do apply retroactively.[3]

Xcel opposes virtually every assertion by Plaintiff, beginning by challenging Plaintiff's conclusion that *New Jersey* specifically held that electric utilities remain subject to the MACT requirements of section 112(g). *New Jersey*, Xcel argues, simply held that the "delisting" was improper because it failed to follow the statutory procedures established in section 112(c)(9); it did not determine the applicability of section 112(g) or apply it to the parties before it. Xcel's Response to Plaintiff's Brief (ECF No. 69) at 4-5. Because of this, Xcel argues *Harper* does not apply and agrees that the issue of retroactivity is resolved by applying the *Chevron* standards, which Xcel asserts weigh heavily against applying section 112(g) retroactively. *Id.* at 6-8. Xcel also argues that no civil penalties can be assessed because Plaintiff lacks standing, WildEarth's claims have become moot, and because I lack jurisdiction over wholly past violations. *Id.* at 12-16. Xcel argues under such circumstances that any civil penalty would be

---

[2]Under *Harper*, a newly announced legal rule is applied retroactively only after the new rule has been "announced and applied to the parties to the controversy." 509 U.S. at 96. Moreover, a rule applied retroactively under *Harper* affects only cases still open to direct review. *Id.* at 97. Since Xcel's permit is no longer open to direct review, *Harper* is inapplicable here.

[3]WildEarth also argues that obtaining the approval of its MACT determination in 2010 did not render WildEarth claims moot, asserting that violations lasted somewhere between 14 and 50 months, depending upon whether the court determines the violation to have occurred at commencement of construction or upon the decision in *New Jersey*.

4

inappropriate. *Id.* at 16-18. WildEarth's reply expanded its arguments but raised no new issues. *See* WildEarth's Reply Brief (ECF No. 70).

      WildEarth was also allowed to file a motion for partial summary judgment which was opposed by Xcel in substance and by a motion to strike. In fact, these new rounds of briefing just afforded both sides with an opportunity to make essentially the same arguments with one exception. WildEarth emphasized two recent decisions as authority for the proposition that after the *New Jersey* decision, utilities are obligated to obtain a MACT determination before any additional construction can be made. Plaintiff's Motion for Partial Summary Judgment (ECF No. 74) at p. 13. Relying principally on *Sierra Club, Inc. v. Sandy Creek Energy Associates, L.P.*, 627 F.3d 134 (5th Cir. 2010) and *WildEarth Guardians v. Lamar Utilities Board*, Civil Action No. 1:09-cv-02974-DME-BNB, 2010 WL 3239242 (D. Colo., Aug. 13, 2010), WildEarth asserts that once the delisting rule was vacated by *New Jersey*, Xcel should have stopped construction until it obtained a MACT determination. *Id.* at 14. Xcel disagrees, arguing both *Sandy Creek* and *Lamar* are distinguishable.

      This dispute is best resolved by placing it within the context of Comanche 3's permit history.[4] As noted, when Xcel began the permitting process in 2004, EGUs such as Comanche 3 were and were subject to MACT limitations of section 312(g). In August, 2004, Xcel followed this law and submitted its application with a MACT determination at $20 \times 10^{-6}$ lbs/MWhr on a 12-month rolling average. In that same year, Xcel settled disputes of objectors to the Comanche 3 by agreeing to meet that MACT

---

[4]A more detailed history is contained in my Order on Motion to Dismiss (ECF No. 64) at pp. 2-7 with appropriate record citations.

standard, not only for Comanche 3 but also for the two preexisting units which had not met that standard. In January 2005, Xcel amended its pending application to include the terms of the settlement and in March 2005, APCD released an initial draft of the permit which included acceptance of Xcel's proposed MACT limitations.

However, virtually contemporaneously with this permit activity, the EPA initiated and consummated the "delisting" process to remove EGUs from regulation under section 112 and placing them under section 111, to be governed by CAMR. The "delisting" rule was published on March 29, 2005, and the CAMR rule on May 18, 2005.

After the delisting rule was adopted the APCD held public hearings and received comments, at which WildEarth did not participate. APCD then issued the final permit for Comanche 3 on July 5, 2005, which contained a CAMR requirement as opposed to a MACT determination which the permit acknowledged Xcel's application had included. In fact, the permit placed limitations on mercury emissions with the MACT determination because of the settlement.

A group of objectors to the permit filed suit in district court which upheld the permit. The ruling was affirmed by a division of the Colorado Court of Appeals. *Citizens for Clean Air & Water in Pueblo & S. Colo. v. Colo. Dep't of Pub. Health & Env't, Air Pollution Control Div.*, 181 P.3d 393 (Colo. App. 2008), *cert. denied,* Case No. 08SC228, 2008 WL 2581591 (Colo., June 30, 2008).

Construction of Comanche 3 commenced in October, 2005 and continued thereafter without interruption.

After the *New Jersey* decision, the EPA concluded in January 2009, that EGUs such as Comanche 3 must comply with section 112(g) even though construction

6

commenced during the delisting period.  On March 13, 2009, the CDPHE specifically requested that Xcel supplement its MACT determination submitted with its original permit application in August 2004.

On July 24, 2009, Xcel submitted its MACT update with a 12-month moving average of $15 \times 10^{-6}$ lbs/MWhr.  Ultimately, following a period for public comment, the revised final permit issued on February 22, 2010, with a MACT formula of $14.7 \times 10^{-6}$ lbs/MWhr.

Construction continued uninterrupted and there is no evidence that any emission failed to meet the MACT standard, initially submitted or that reduced standard ultimately approved.  Nevertheless, WildEarth seeks to penalize Xcel because it commenced construction without an approved MACT determination and continued until February 22, 2010, still without that approval.  The question really becomes whether a party which met the published standard when it commenced the permit process, then meets a new standard published while still meeting the old standard, and then thereafter meets and exceeds the first standard by the third standard adopted by the agency should be penalized.

With this context, the matter is most appropriately resolved applying a retroactivity analysis under *Chevron Oil Co. v. Huson*, 404 U.S. 97 (1991), a case upon which both parties rely.  *Chevron* establishes the factors to be considered in determining whether a new rule should be applied retroactively:

> First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, . . . or by deciding an issue of first impression whose resolution was not clearly foreshadowed . . . .  Second, it has been stressed

> that 'we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.' . . . Finally, we have weighed the inequity imposed by retroactive application, for '(w)here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity.

404 U.S. at 106-07 (internal citations and quotations omitted).

The first factor to consider is whether vacating the delisting rule establishes a new principle, regulation by MACT, by overruling a clear and prior rule, regulation by CAMR, upon which Xcel had relied. Plainly, given the fact that Xcel commenced the permitting process assuming regulation by MACT and then revised its submittal to regulation by CAMR upon EPA's adoption of the delisting rule, Xcel relied upon the "past precedent," namely the CAMR rule. Both Xcel and the APCD relied upon that "past precedent" in issuing the permit and continuing construction. To say that a party subject to regulation who follows a clear rule adopted by the regulator is subject to a penalty may well be inconsistent with due process standards. *See United States v. Hoechst Celanese Corp.*, 128 F.3d 216, 224 (4th Cir. 1997) (need clear notice to be subject to penalty). In any case, this factor weighs against retroactive application of the return to regulation by MACT.

The second factor, whether retrospective application of the precedent will further or retard its operation, is less clear. Arguably, application of the new rule, regulation by MACT analysis, furthers the original purpose of the statute prior to the adoption of the delisting rule. Although this factor might weigh in favor of retrospective application, I consider it of lesser importance in this case because Xcel has submitted acceptable

MACT determinations from the outset and remains bound to maintaining those standards by reason of the settlement agreement.

The final consideration is whether retroactive application would be inequitable. Under the circumstances of this case I conclude that it would. Xcel commenced the process by complying with section 112(g) and then agreed with objectors to the permitting process that it would apply that MACT determination, not only to the new construction but to preexisting facilities as well. When the delisting rule was adopted, Xcel complied yet maintained its commitment to the MACT determination because of the settlement. When the delisting rule was annulled, Xcel again complied with directives and established a higher standard of MACT determination, presumably in a public interest. Rather than acknowledging that in the end Xcel's compliance with the directives of its regulator imposed higher standards, WildEarth seeks to impose penalties by retroactive application of the latest determination by the regulators. In essence, WildEarth argues that if Xcel had somehow ignored or avoided the explicit direction from its regulators to rely on CAMR rather than a MACT determination and proceeded with its original MACT determination, it would not be subject to its claims for injunctive relief or penalties. Such a result would not further the objectives of the CAA as much as Xcel's actual course of conduct. Xcel not only met the standard of maintaining a MACT determination, it has significantly raised the applicable standard (and presumably benefitted the public interest [5]) by complying with the directives of the

---

[5] Moreover, as noted above, as a result of the settlement, the MACT standard also applies to Xcel's existing facilities, not just the new Comanche 3, another result that furthers the public interest by going beyond what would have been required by the applying only the letter of section 112 to Xcel's permit from the outset.

9

authorized agencies which never instructed Xcel to halt construction pending ultimate MACT submittals. Such retroactive application would be inequitable.

I agree with Xcel that under the circumstances of this case there is no retroactive application of the annulment of the delisting rule, particularly given the MACT determinations obtained both prior to commencement of construction and during construction following the annulment of the rule.[6]

With this resolution, I consider Xcel's briefing to be a renewal of its motion to dismiss, which I grant. Accordingly, I order that the Plaintiff's claims be dismissed with prejudice, including any claim for penalties and attorneys' fees and costs. WildEarth's

---

[6] As noted, WildEarth has argued that two cases in particular stand for the proposition that a MACT determination applied retroactively and certainly to any ongoing construction, citing *Sierra Club, Inc. v. Sandy Creek Energy Associates, L.P.*, 627 F.3d 134 (5th Cir. 2010) and *WildEarth Guardians v. Lamar Utilities Board*, Civil Action No. 1:09-cv-02974-DME-BNB, 2010 WL 3239242 (D. Colo., Aug. 13, 2010). Both of these cases are clearly distinguishable because the defendant in each had not sought and obtained MACT determinations on even one occasion, let alone two as was done by Xcel in this matter.

Motion for Partial Summary Judgment (ECF No. 74) and Xcel's Motion to Strike (ECF No. 80) are denied as moot.

DATED at Denver, Colorado, on August 1, 2011.

BY THE COURT:

s/ Walker D. Miller
United States Senior District Judge